**In re the Matter of Lori Ann FRANK–BRETWISCH, Petitioner,**
**Respondent**

v.

**William RYAN, Appellant.**

**No. A06–1864.**

Court of Appeals of Minnesota.

Dec. 4, 2007.

Patricia A. O'Gorman, Cottage Grove, MN, for respondent Frank–Bretwisch.

Kathy Krider Hart, Eagan, MN, for appellant.

Lisa D. Kontz, Hastings, MN, for respondent Dakota County.

Considered and decided by ROSS, Presiding Judge; KALITOWSKI, Judge; and CRIPPEN, Judge.

## O P I N I O N

CRIPPEN, Judge.*

On appeal from the denial of his motion to increase respondent Lori Ann Frank–Bretwisch's stipulated sub-guideline child-support obligation, appellant William Ryan challenges the determination of the district court that there was no substantial change in circumstances rendering respondent's existing support obligation unreasonable

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

and unfair. Because the findings of the district court are inadequate, particularly in failing to address the child's best interests, we reverse and remand.

## FACTS

A February 1997 parentage order adjudicated appellant the father of the parties' child, who was born in February 1991. At some point, not made clear in the record, the child was in respondent's sole physical custody, and appellant, who had joint legal custody, enjoyed some parenting time. Between February 1997 and August 2004, the parties litigated numerous child-support disputes. Appellant moved for physical custody of the child and, in April 2005, the child moved into appellant's home.

In May 2005 child-support proceedings, appellant sought to have respondent's bonus income included in her net monthly income for child-support purposes. The CSM's order stated that, although respondent received bonuses in 2003 and 2004, the bonus income was not guaranteed or regular and reliable, and would not be included in her income for child-support purposes. The CSM also found that respondent had a net monthly income of $4,386, appellant was receiving net monthly unemployment compensation of $1,010, respondent had reasonable monthly living expenses of $9,501, and appellant's reasonable monthly expenses were $3,760. Setting appellant's obligation for the period between November 2004 and May 2005, the CSM determined that "[t]he parties' comparative expenses and income do not warrant a departure from the Guidelines."

Before an August 2005 evidentiary hearing on appellant's motion to modify physical custody, the parties read into the rec-

---

Minn. Const. art. VI, § 10.

ord an agreement regarding custody, child support, and parenting time. Under the agreement, the child would be in appellant's sole physical custody and respondent would pay sub-guideline monthly child support of $350. The agreement also stated that appellant and respondent then had net monthly incomes of $0 and $4,386 (excluding bonuses), respectively. The district court's September order adopted the parties' agreement. For reasons that are unclear, this order does not acknowledge that respondent's support obligation is a significant downward deviation from the child-support guidelines, states no reasons for the deviation, and cites as the only basis for the award the circumstances of respondent earning $4,386 monthly and appellant having no income. Neither party sought review or appeal of the order.

In February 2006, appellant moved to increase child support, requesting again that respondent's bonuses be included in the calculation of her income and asking that a support obligation be set at the guideline amount for her current, increased net monthly income, effective September 1, 2005. He asserted that respondent had materially misrepresented her income to the court in the proceedings generating the September 2005 order.

In an April 2006 order, the CSM detailed respondent's income and bonus histories, as well as the prior litigation, and found that respondent's gross annual income for 2006 was $86,400, up 11% from the previous year, that respondent had not materially misrepresented her income, and that appellant had neglected to seek inclusion of respondent's bonus income when support was set in September 2005. The CSM, in her 2006 order, expressed "grave concerns" over "the propriety of the amount of support ordered and the lack of justification for a downward deviation."

The district court, when reviewing the CSM's 2006 decision, found the CSM's grave concerns notable and added that it shared those concerns. The court added that it was "very concerned about the reasonableness of the current child support obligation in light of the costs for the basic necessities of the child and the substantial income of [respondent]," and that "[i]n the end, it is the child who will suffer if there are insufficient funds to meet her basic requirements." But the district court noted that "both parties were represented by counsel [in 2005] and fully advised of the situation and various outcomes." Similarly, the CSM found that appellant "has always known" that respondent's compensation structure included bonuses "and the approximate amount of her income[,]" that there were "grave concerns" about appellant's "candor to the court" in making his motion to include respondent's bonuses in her income for support purposes when he had recently stipulated to not including respondent's bonuses in her income, and that the "primary reason" for his motion to modify respondent's support obligation "is because he feels he made a bad deal."

Noting the brief amount of time that passed between the parties' stipulation and appellant's motion, the CSM ruled that there was not, at that time, a substantial change in circumstances rendering respondent's existing support obligation unreasonable and unfair, and denied appellant's motion. In August 2006, the district court affirmed the CSM, noting that the 2005 decision could no longer be reviewed.

## ISSUE

Did the district court abuse its discretion in denying appellant's motion to modify respondent's child-support obligation?

## ANALYSIS

 Child-support orders may be modified upon a showing of substantially

changed circumstances making the terms of an existing support order unreasonable and unfair. Minn.Stat. § 518.64, subd. 2 (2004).[1] If applying the child-support guidelines to the parties current circumstances produces a guideline support obligation that is at least 20 and $50 per month different from the obligation in the current order, it is presumed that there has been a substantial change in circumstances, and there is an additional, rebuttable presumption that the existing support order is unreasonable and unfair. *Id.*, subd. 2(b)(1). When, as here, the support obligation sought to be modified was set below the guideline amount, the change in circumstances necessary to justify increasing support to the guideline amount is limited at best. *See Murray v. Murray*, 425 N.W.2d 315, 317 (Minn.App.1988) (noting almost any change in circumstances would be substantial when original support set at less than one-half of the recommended guidelines support); *Compart v. Compart*, 417 N.W.2d 658, 662 (Minn.App. 1988) (stating that in considering a substantial change, a court should consider the inequities of the original child support order).

◼ The district court has broad discretion regarding whether to modify support, and its decision will not be altered on appeal absent an abuse of that discretion, which occurs if the district court resolves the matter in a manner that is against logic and the facts on the record. *Putz v. Putz*, 645 N.W.2d 343, 347 (Minn.2002).

As often will be the case after a downward deviation, the statutory modification presumptions are triggered because respondents current circumstances would produce a support award much more than 20 higher and $50 greater than the prior award. Minn.Stat. § 518.64, subd. 2(b)(1). Although the district court failed to find respondents current net monthly income, her gross income has increased and it is inescapable to conclude that her current net monthly income is more than $4,386 (the amount found in May 2005) and well in excess of the amount that would produce the most recent support award of $350. Under the guidelines, respondents income, even in 2005, would have produced a support award of more than $1,000. *See* Minn.Stat. § 518.551, subd. 5(b) (2004).

Thus, there is a statutory presumption that there has been a substantial change in circumstances, and an additional, rebuttable statutory presumption that the terms of the existing support order are unreasonable and unfair, under Minn.Stat. § 518.64, subd. 2(b)(1). Although the parties 2005 stipulation is relevant to issues of fairness and reasonableness, at least in terms of the interests of the parents, nothing in section 518.64 suggests that the presumptions are inapplicable in the aftermath of a stipulated award.

◼ Determining whether the increase in respondents income actually renders the existing support order unreasonable and unfair is unnecessarily complicated by the fact that the September 2005 order setting

---

1. Generally, courts apply the law in effect at the time they make their decision unless doing so will alter vested rights or result in manifest injustice. *Interstate Power Co. v. Nobles County Bd. of Comm'rs*, 617 N.W.2d 566, 575–76 (Minn.2000); *McClelland v. McClelland*, 393 N.W.2d 224, 226–27 (Minn.App. 1986), *review denied* (Minn. Nov. 17, 1986). Here, since the district court made its decision, the legislature's renumeration and substantial alteration of the child-support statutes has become effective. *See* 2006 Minn. Laws ch. 280, § 44 (reciting effective date of amended child-support laws); *compare* Minn. Stat. §§ 518.551, .64 (2004) *with* Minn.Stat. §§ 518A.26–.78 (2006). Although we apply the prior law, we recognize that much of the language affecting this case is restated in the later enactment.

respondents support obligation at a sub-guideline amount lacks the statutorily required findings addressing the setting of support at an amount deviating from the guideline amount. *See* Minn.Stat. § 518.551, subds. 5(a) (requiring adoption of a stipulated support obligation if each party is represented by counsel, unless the stipulation does not meet the conditions of [Minn.Stat. § 518.551, subd. 5(i)]); 5(i) (requiring findings on the factors listed in Minn.Stat. § 518.551, subd. 5(c) if support is set at a nonguideline amount); 5(c) (2004) (listing factors a decision maker is to consider when addressing whether to set support at an amount deviating from the guidelines and the amount of a non-guideline support obligation). Pertinent to the facts in this case, the main factors the district court must consider in setting or modifying child support are all of the earnings of both parents, including both real and personal property, and the child's financial needs and resources, physical and emotional condition, and educational needs. Minn.Stat. § 518.551, subd. 5(c).

 Consistent with precedent and the record respecting court adoption of the 2005 stipulation, both the CSM and the district court were understandably uncomfortable with the continued effectiveness of the 2005 order. As this court has observed:

> Whether there is a substantial change in circumstances rendering an existing support obligation unreasonable and unfair generally requires comparing the parties' circumstances at the time support was last set or modified to their circumstances at the time of the motion to modify. Unless a support order provides a baseline for future modification motions by reciting the parties' then-existing circumstances, the litigation of a later motion to modify that order becomes unnecessarily complicated because it requires the parties to litigate not only their circumstances at the time of the motion, but also their circumstances at the time of the order sought to be modified.

*Maschoff v. Leiding,* 696 N.W.2d 834, 840 (Minn.App.2005) (citations omitted).

Thus, respondent's burden, created by presumptions favoring appellant, was further enlarged by the defective and incomplete process that occurred when the support obligation was previously determined. Having in mind this character of the issue in the case, and having reviewed the findings of the district court, it is evident that the determination against modification cannot be adequately reviewed without a remand for additional findings. *See, e.g., Erickson v. Erickson,* 385 N.W.2d 301, 303–04 (Minn.1986) (requiring findings adequate to permit review).

The current fairness and reasonableness of the 2005 award cannot be determined without findings that address respondents net income; respondents needs, relevant to the question of whether her ability to pay is hampered; appellants needs, showing the deficiency of the current award, if any, in meeting those needs; other considerations suggesting cause for a downward deviation; and changes in any of these circumstances since September 2005. *See* Minn.Stat. § 518.64, subd. 2(a) (stating the terms of a child support order may be modified upon a showing of factors that include substantially increased or decreased earnings of a party (or needs of a party or child), any of which makes the terms unreasonable and unfair); *see also* Minn.Stat. § 518.551, subd. 5(c)(i).

But the district court also must address a primary consideration, beyond the interests of the parents, to permit our review of its exercise of discretion in determining whether respondent has rebutted the presumption of unfairness and

unreasonableness prompted by the increase of her income. The orders denying appellants motion to modify support fail to address whether a significantly sub-guideline obligation is in the child's best interests. An extensive line of precedent shows long and unambiguous judicial commitment to the precept that a child's best interests are the courts paramount consideration in addressing child-related questions. *See, e.g., Olson v. Olson,* 534 N.W.2d 547, 549 (Minn.1995) (stating [a]s in all matters involving court-established family relationships of children, we begin with reference to our paramount commitment to the best interests of the children. We said a century ago, The cardinal principle in such matters is to regard the benefit of the infant as paramount.... *Flint v. Flint,* [ ], and we have reiterated that premise in many recent cases); *State ex rel. Flint v. Flint,* 63 Minn. 187, 189, 65 N.W. 272, 273 (1895) (observing that a child's best interests outweigh the interests of a parent, even if the parents interest is recognized by statute).

Thus, the fairness and reasonableness of the 2005 award goes to matters beyond the interests of each parent, to the paramount consideration of the child's best interests. This observation becomes critical in circumstances like these, when the primary argument against modification regards the earlier stipulation of the parties and when the order approving that stipulation does not address the paramount consideration of the child's best interests or any consideration other than the income of each parent.

Taking into account the interests of the child, as well as those of both parents, a determination of the current fairness and reasonableness of the 2005 award requires that the district court address the needs of the child, ordinary and extraordinary, with an eye toward the standard of living enjoyed by the child before the custody change, and showing the deficiency of the current award, if any, in meeting those needs; reasons, if any, from the child's vantage point, for a downward deviation; other considerations insofar as they bear on the effect of the award on the best interests of the child; and changes in any of these circumstances since September 2005. *See* Minn.Stat. §§ 518.64, .551, subd. 5(c)(i). In sum, we remand for the district court's further findings, especially as it gives the court occasion to focus its attention on the best interests of the child.

Appellant also argues that the district court wrongfully overlooked respondent's bonus income. The CSM noted that appellant did not ask that bonus income be considered when the stipulation was concluded in 2005. Although the parties stipulated to respondent's income in September 2005, this followed a CSM's decision earlier in the same year that the bonus income was too irregular to be considered in determining a support award. Among the circumstances occurring after the 2005 award, respondent received still another bonus. On remand, it should be determined whether current circumstances show regular bonus income. And as the CSM recognized, a separate award, dependent on the actual receipt of a bonus, may be appropriate even when it is too irregular to be calculated as income. *Novak v. Novak,* 406 N.W.2d 64, 68 (Minn.App. 1987), *review denied* (Minn. July 22, 1987). Such an award is within the scope of considerations to be entertained on remand when the court determines if respondent has adequately shown the fairness of the 2005 order in the aftermath of her further income increase.

Appellant's remaining arguments need not be addressed in light of the remand of the case to the district court.

## DECISION

The district court abused its discretion in finding that there had been no substantial change in circumstances. Because the prior order and the orders denying the modification motion lack adequate findings, it is impossible to assess the reasonableness and fairness of the prior order under current circumstances. We reverse the denial of modification and remand for further findings as provided in this opinion. The district court has the discretion to determine whether it needs to reopen the record to make these determinations.

**Reversed and remanded.**